[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-14391

Non-Argument Calendar

_____

JOHNNIE OVERSTREET,
Administrator of the Estate of Bryan Overstreet,
deceased,
CHELSEA WELCH,
As parent and next friend of A. Overstreet, a minor,

Plaintiffs-Appellants,

versus

WORTH COUNTY GEORGIA,
JEFF HOBBY,
Former Sheriff of Worth County, Georgia,
in his official and individual capacities,
CORONOR JOHN M. JOHNSON,
Coroner of Worth County, Georgia, in his official

and individual capacities,

JOHN SUMNER,

Deputy, Worth County Sheriff's Office, in his official
and individual capacities,

JOHN DOES, 1 - 10,

Deputies, Worth County Sheriff's Office in their official
and individual capacities,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 1:20-cv-00095-LAG

_____

Before WILSON, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Johnnie Overstreet—the father of decedent Bryan Over-
street and the administrator of Bryan's estate—and Chelsea
Welch—the mother of Bryan Overstreet's minor child, A.O.—ap-
peal the district court's order dismissing their complaint. The ap-
pellants challenge the district court's rulings that the two-year stat-
ute of limitations barred their federal claims and that the statute of
limitations should not be tolled due to fraud, misrepresentation, or

the discovery rule.  After review of the parties' briefs and the record, we affirm.

## I

### A[1]

On April 28, 2015, between 3:35 a.m. and 3:47 a.m., Bryan Overstreet was walking along Georgia Highway 33 in Sylvester, Worth County, Georgia.  At that same time, Deputy Sheriff John Sumner was driving on Georgia Highway 33 in his police cruiser.  At 3:45 a.m. Bryan received a phone call from his cousin and stood on the shoulder of the roadway to take that call.  During that phone conversation, Deputy Sumner struck Bryan with his car.

After striking Bryan, Deputy Sumner made a 911 call and stated, "I just run [sic] over something in the road here . . . .  Unsure of what it was."  D.E. 1 at 7, ¶ 26.  Sometime thereafter, then-Sheriff Jeff Hobby and Coroner John M. Johnson arrived at the scene.  Deputy Sumner, Sheriff Hobby, and Coroner Johnson all failed to render aid to Bryan or check for signs of life.

Once local and state investigators and EMS personnel arrived at the scene, Deputy Sumner misrepresented to them that Bryan had already been lying on the roadway and was dead prior to when he struck him.  Deputy Sumner's misstatements

---

[1] Because this appeal is from the district court's dismissal of the appellants' complaint, we set forth the facts as alleged in the complaint.

prevented investigators from "adequately investigating the cause and circumstances of [Bryan's] injuries and death." *Id.* at 9, ¶¶ 33–36.

Coroner Johnson spoke with Sheriff Hobby, who instructed him to "run over [Bryan] so that they could avoid liability on the part of Worth County and [Deputy] Sumner." *Id.* at 9, ¶ 38. In front of everyone who was at the scene, Coroner Johnson drove his van over Bryan's body and then reversed, running him over a second time. *See id.* at 9–10, ¶¶ 40–41. Coroner Johnson ran over Bryan's body despite the fact that a Worth County Deputy had provided specific instructions on where to locate Bryan. *See id.* at 9, ¶ 39.

In contradiction of the statement Deputy Sumner gave to the 911 operator, in a report later given to Georgia State Patrol Officer David Joiner Deputy Sumner alleged that he had in fact seen that it was a pedestrian on the road but that he had been unsuccessful in attempting to avoid a collision with Bryan. Because he was unable to avoid the crash, Deputy Sumner stated in the report that his vehicle "struck [Bryan] and dragged him until his final rest in the northbound lane of Georgia 33 face down." *Id.* at 7, ¶ 27.

## B

On May 22, 2020, the appellants filed the underlying complaint in federal court. They asserted five claims against Worth County, former Sheriff Hobby, Coroner Johnson, and Deputy Sumner. Counts I and II were claims under 42 U.S.C. § 1983,

alleging violations of the Fifth and Fourteenth Amendments. Count III asserted state law claims for fraud and misrepresentation. Count IV pled entitlement to the tolling of the statute of limitations due to the defendants' fraud and misrepresentation. Count V was a claim for attorney's fees and costs. The complaint alleged that (1) the defendants knew or had reason to know that Bryan was still alive after being struck by Deputy Sumner; (2) the defendants acted in concert to kill Bryan to prevent him from ruining the reputation of the police department; and (3) the defendants deliberately lied to investigators about the circumstances of Bryan's death, thereby preventing a proper investigation.

The appellants contended that although the complaint had been filed outside of Georgia's two-year statute of limitations for personal injury claims, they were entitled to tolling for at least two reasons. First, the defendants had fraudulently concealed, through affirmative misrepresentations and omissions, the cause and manner of Bryan's injuries. *See id.* at 16, ¶ 74. Second, the appellants could not have discovered the true cause of Bryan's injuries and death through reasonable care and due diligence before November of 2019. *See id.* at ¶ 73.

The defendants filed a motion to dismiss, arguing that the claims were barred by Georgia's two-year statute of limitations for personal injury claims. The motion asserted that the statute of limitations on the appellants' claims had not been tolled. The

defendants attached seven exhibits to the motion to dismiss, only three of which the district court considered—Exhibits A, C, and G.[2]

Exhibit A was a complaint that the appellants had filed on December 12, 2016, in the Superior Court of Worth County, Georgia (*Overstreet I*). In that complaint, they asserted the following claims: (1) negligence against Worth County, the Worth County Sheriff's Office, and Deputy Sumner; (2) respondeat superior against Worth County and the Worth County Sheriff's Office; (3) trespass against Worth County, the Worth County medical examiner, and Coroner Johnson; (4) respondeat superior against Worth County, the Worth County medical examiner, and Coroner Johnson; and (5) damages. *See* D.E. 8-1. The appellants voluntarily dismissed *Overstreet I* in June of 2018, but later renewed it pursuant to O.C.G.A. § 9-2-61 on December 19, 2018 (*Overstreet II*). Exhibit C was the renewed complaint in *Overstreet II*. *See* D.E. 8-3. Exhibit G was a motion to file an amended renewal complaint. *See* D.E. 8-7.

The complaints in *Overstreet I* and *Overstreet II* alleged that Deputy Sumner had struck Bryan with his police cruiser, called 911 to report the incident, and was later "disingenuous" about what had happened to Bryan. *See* D.E. 8-1 at 4–7, ¶¶ 13–25; D.E. 8-3 at

---

[2] Although the defendants attached other exhibits to their motion to dismiss, the district court declined to consider them because the appellants objected and, in any event, they would not have altered its decision. *See* D.E. 19 at 7 n.2.

5–8, ¶¶ 18–30.  As to Coroner Johnson, the complaints alleged that he had "carelessly and negligently rolled over the deceased body of [Bryan], then backed up over the body a second time."  D.E. 8-1 at 7, ¶ 28; D.E. 8-3 at 8, ¶ 33.  The complaints further stated that "[t]he facts of Coroner Johnson's mutilation and desecration of [Bryan's] body were omitted from the original crash reports."  D.E. 8-1 at 7, ¶ 29; D.E. 8-3 at 8, ¶ 34.

In response to the defendants' motion to dismiss, the appellants argued that they could not have discovered the true cause of Bryan's injuries and death before November 22, 2019—the date on which they received their experts' opinions.  The experts concluded that Bryan had not been killed by Deputy Sumner, but, rather, that he had died after being run over by Coroner Johnson.

The district court granted the motion to dismiss and entered judgment for the defendants, dismissing the federal claims with prejudice due to the running of the statute of limitations and dismissing the state law claims without prejudice.  The court held that the appellants were not entitled to equitable tolling because their failure to diligently prosecute their case could not "be attributed to [the d]efendants," and because they had "not established the existence of fraud that would act to toll the statute of limitations."  D.E. 19 at 16.

The appellants then filed a motion for reconsideration, asking the district court to revisit its holding that their claims were not tolled due to fraud.  The court denied that motion, and this appeal followed.

## II

The appellants argue that the district court erroneously dismissed their complaint because the statute of limitations on their claims was tolled as a result of the defendants' fraudulent concealment. *See* Appellants' Initial Br. at 11–15.  More particularly, they allege that Coroner Johnson, former Sheriff Hobby, and Deputy Sumner conspired to conceal the facts that led to the injury and death of Bryan—something they contend they could not have known until they received their experts' opinions in late 2019. They further argue that the court improperly considered documents outside the pleadings.  Finally, they contend that the court abused its discretion in denying them an opportunity to amend their complaint.[3]

The defendants respond that the district court did not err in granting their motion to dismiss because the appellants failed to allege specific acts of fraud that would have tolled the limitations period.  They further argue that the district court did not err in considering three of the exhibits attached to their motion because they were court documents from prior proceedings, which were properly the subject of judicial notice.

---

[3] The appellants do not dispute that, absent tolling, their claims are barred by Georgia's personal injury statute of limitations.  *See* Appellants' Initial Br. at 11–12.

### III

### A

We review the district court's decision to grant a defendant's motion to dismiss for failure to state a claim *de novo*, accepting the allegations in the complaint as true and construing them in the light most favorable to the appellants. *See Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1305 (11th Cir. 2009). This construction, however, does not apply to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

We also review the district court's "interpretation and application of statutes of limitations" *de novo. See Ctr. for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006). Because the statute of limitations bar is an affirmative defense, dismissal for failure to state a claim on statute of limitation grounds is proper only if it is apparent from the face of the complaint that the claim is time barred. *See La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

### B

We first address the appellants' argument that the district court erred in considering their pleadings from the state-court action. They argue that the district court could not have considered these documents without converting the motion to dismiss to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d).

There are two exceptions to the conversion provision in Rule 12(d). The first is the "incorporation by reference" doctrine,

which allows for documents attached to a motion to dismiss to be considered by the court if they are: (1) central to the plaintiff's claim and (2) undisputed (authenticity of the document is not challenged). *See, e.g., Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2007). The second exception occurs where the court takes judicial notice of documents, such as matters of public record and prior court records. That exception was initially limited to judicial notice of S.E.C. filings in a securities fraud action, *see Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1276–78 (11th Cir. 1999), but it has since been expanded to other contexts. *See Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013) (taking judicial notice, at the motion to dismiss stage, of "court documents from [a] state eviction action").

Given our application of the second exception, the district court correctly determined that it did not need to convert the defendants' motion to dismiss to a motion for summary judgment. The district court considered only certain exhibits filed with the motion to dismiss—all of which were prior filings by the appellants in related state-court proceedings. Irrespective of whether these state-court documents satisfied the "incorporation by reference" exception, the district court properly took judicial notice of them. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (explaining that, in addressing a motion to dismiss, courts consider not only "the complaint in its entirety" but also "other sources courts ordinarily examine when ruling on Rule 12(b)(6)

motions to dismiss, . . . [such as] matters of which a court may take judicial notice").

## C

"All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008). Typically, in a statute of limitations case we would begin by addressing the district court's holding that the appellants' constitutional claims, brought under § 1983, are barred by the Georgia statute of limitations. *See generally id.* In this case, however, the appellants recognize that their § 1983 claims are barred by the state of limitations unless there is equitable tolling. *See* Appellants' Initial Br. at 11–12 (stating that the applicable statute of limitations is two years without contesting its applicability to this case). So we merely recount what is necessary to explain why equitable tolling does not apply.

Generally speaking, a federal cause of action under § 1983 accrues when the plaintiff "knows or has reason to know of the injury which is the basis of the action." *Rubin v. O'Koren*, 621 F.2d 114, 116 (5th Cir. 1980) (internal quotation marks and citation omitted). At the latest, the appellants' § 1983 claims accrued on December 8, 2016—the date *Overstreet I* was filed. Under that later date, the limitations period for the appellants' causes of action would have expired on December 8, 2018.

Filed shortly after Bryan's death, the complaint in *Over-street I* shows that the appellants knew or should have known in late 2016 (1) that Bryan had been deprived of his constitutionally protected interests at the hands of the state, (2) that he was struck and/or run over by two state actors (Deputy Sumner and Coroner Johnson), and (3) that Coroner Johnson has not been truthful about his actions. Although they would not necessarily have been able to determine which of the two state actors caused Bryan's death, the appellants had sufficient information at that time to know that it was caused by one of the two—an identifiable state actor.

The appellants did not file their federal complaint until May 22, 2020. Because the § 1983 claims are subject to a two-year statute of limitations, and the complaint was filed after the running of that limitations period, the appellants were only entitled to proceed on their federal claims if equitable tolling was applicable.

The Supreme Court has said that it has "generally referred to state law for tolling rules." *Wallace v. Kato*, 549 U.S. 384, 394 (2007). It has also stated, however, that tolling is not "appropriate to avoid the risk of concurrent litigation." *Id.* at 396. To invoke tolling based on fraud under Georgia law, which pauses the statute of limitations until a plaintiff discovers the fraud, a plaintiff must plausibly allege three elements. *See Anthony v. Am. Gen. Fin. Servs., Inc.*, 626 F.3d 1318, 1321 (11th Cir. 2010); O.C.G.A. § 9-3-96.

First, a plaintiff must allege that a defendant committed "actual fraud." *McClung Surveying, Inc. v. Worl*, 541 S.E.2d 703, 706 (Ga. Ct. App. 2000). Second, the plaintiff must show that the

"actual fraud" concealed the cause of action.  *See id.*  Third, the plaintiff must exercise reasonable diligence to discover the cause of action despite his failure to do so within the statute of limitations. *See id.*

"Actual fraud" under Georgia law consists of five elements: (1) false representation or omission of a material fact, (2) scienter, (3) intention to induce the party claiming fraud to act or refrain from acting, (4) justifiable reliance, and (5) damages.  *See Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1288 (11th Cir. 2007). "[W]here the gravamen of the action is other than actual fraud, . . . there must be a separate independent actual fraud involving moral turpitude which debars and deters the plaintiff from bringing his action." *Shipman v. Horizon Corp.*, 267 S.E.2d 244, 246 (Ga. 1980). Under this circumstance, however, "silence concerning the underlying action cannot be a continuation of an original actual fraud because there is none." *Id.*  The Georgia Court of Appeals has held that "[t]o toll the statute of limitations, concealment of a cause of action must be by positive affirmative act and not by mere silence." *Comerford v. Hurley*, 268 S.E.2d 358, 360 (Ga. Ct. App. 1980). Therefore, "'mere silence' is not sufficient to toll the statute [of limitations] unless there is a duty to make a disclosure because of a relationship of trust and confidence between the parties." *Shipman*, 267 S.E.2d at 246.

The appellants' § 1983 claims are not predicated on fraud. So to satisfy the actual fraud requirement for equitable tolling they must allege the existence of a "separate independent actual fraud

14                    Opinion of the Court                    21-14391

involving moral turpitude which debar[ed] and deter[ed] [them] from bringing [their] action." *Id.* In their complaint, the appellants plausibly alleged at least some actual and continuing fraud. *See, e.g.,* D.E. 1 at 10, 15–16, ¶¶ 43–44, 71–75. The appellants' allegations as to the second element—that the defendants' actual fraud concealed the causes of action—are more questionable. *See McClung,* 541 S.E.2d at 706. Assuming without deciding that the appellants satisfied the first two elements, they nevertheless have failed to show that they exercised reasonable diligence to discover their causes of action. *See id.*

The appellants argue that the district court erred in finding, as a matter of law, that they did not exercise reasonable diligence in discovering and bringing their federal claims. They contend that this is a question of fact that must be determined by a jury. Although the appellants are correct that due diligence is typically a question of fact, "a party may fail to exercise due diligence as a matter of law." *Id.*

Reasonable diligence under Georgia law is measured by a "prudent man" standard, which is objective. *See Doe v. St. Joseph's Cath. Church,* 870 S.E.2d 365, 376 (Ga. 2022). The appellants needed to plausibly allege facts indicating their due diligence in conducting an adequate investigation. *See Ashcroft,* 556 U.S. at 678. Instead, they merely made conclusory statements that they engaged in due diligence to discover the true cause of Bryan's death and that it was not possible to have discovered the cause due to the defendants' concealment. *See* D.E. 1 at 15–16, ¶¶ 72–73. Such a

legal conclusion need not be taken as true by the district court or by us. *See Ashcroft*, 556 U.S. at 678.

Further, contrary to the appellants' contention that they exercised reasonable diligence in bringing their federal causes of action, the complaints filed in *Overstreet I* and *Overstreet II* demonstrate otherwise. These pleadings show that the appellants were on notice of the potential fraud on December 8, 2016, and did not fully investigate until years later when they received their experts' opinions on November 22, 2019.

At the time of the filing of the 2016 complaint in *Overstreet I*, the appellants had essentially the same knowledge regarding the defendants' alleged actions and misrepresentations as they did at the time of the filing of the federal complaint. The fraudulent actions they alleged in *Overstreet I* were (1) that Coroner Johnson ran over Bryan and lied about and failed to report his actions, (2) that Deputy Sumner was "disingenuous" about what happened to Bryan, and (3) that Deputy Sumner and Coroner Johnson had a private conversation prior to Coroner Johnson running over Bryan in which they conspired to hide the true cause of his death. As to these facts, the appellants were on notice years prior to the receipt of their expert opinions. These facts, then, could not have operated to conceal possible causes of action or bar the appellants from bringing suit for purposes of tolling the statute of limitations. *See Shipman*, 267 S.E.2d at 246. The appellants simply did not exercise reasonable diligence.

## D

Finally, the appellants argue that the district court abused its discretion in dismissing their complaint without allowing them an opportunity to amend.  Because the appellants' § 1983 claims are barred by the statute of limitations, however, amendment would be futile.  *See, e.g., Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).  As such, the court did not abuse its discretion in denying them leave to amend.

## IV

We affirm the district court's order dismissing the appellants' complaint.

**AFFIRMED.**