MEMORANDUM AND ORDER
 

 YOUNG, Chief Judge.
 

 I. FACTUAL AND PROCEDURAL BACKGROUND
 

 Robert Mowbray (“Mowbray”), on his own behalf and on behalf of the class he represents, brings this motion for summary judgment as to the liability of Waste Management Holdings, Inc. (‘Waste Management”) on certain claims for breach of contract. The facts of this case are laid out in this Court’s previous opinions.
 
 See Mowbray v. Waste Management Holdings, Inc.,
 
 45 F.Supp.2d 132 (D.Mass.1999) (hereinafter
 
 Mowbray
 
 I);
 
 Mowbray v. Waste Management Holdings, Inc.,
 
 189 F.R.D. 194 (D.Mass.1999) (hereinafter
 
 Mowbray II).
 

 [1]
 

 For purposes of. this summary judgment motion the relevant undisputed facts are as follows. During the period from January 1, 1990, through February 24, 1998, Waste Management engaged in 119 transactions in which it acquired assets in exchange for Waste Management common stock. As part of the sales agreements, Waste Management warranted that its financial documents filed with the Securities and Exchange Commission and provided to the purchaser “did not contain an untrue statement” and were “not misleading.” On February 24, 1998, Waste Management issued a press release stating that it “had made mistakes in the corporate financial reporting process” and, as a result, had to restate its financial results for the better part of the decade. The restatement resulted in a total decrease in income in the hundreds of millions of dollars.
 

 Based on the press release, Robert Mowbray brought an action in this Court alleging breach of contractual warranty. This Court granted Mowbray summary judgment on his claim for breach of warranty.
 
 See Mowbray I,
 
 45 F.Supp.2d at 143-44. Following his victory, Mowbray
 
 *137
 
 sought to represent a class of similarly situated individuals. In an order by this Court on October 15, 1999, a motion for class certification was granted certifying a class consisting of approximately eighty-one potential members arising from approximately thirty-two separate transactions.
 
 See Mowbray II,
 
 189 F.R.D. at 202. Mowbray, as representative of the class, now moves for summary judgment as to breach of contract.
 

 II. ANALYSIS
 

 Rather than quibble with the prima facie breach of contract case, Waste Management attempts to counter the claim by presenting affirmative defenses. Specifically, Waste Management contends that summary judgment must be denied because: (1) multiple transactions are time barred by the Illinois Securities Law; (2) fourteen of the transactions are time barred by the applicable state statute of limitations; (3) many of the class members may have waived the warranties under the contract; and (4) additional discovery is needed to explore fully the waiver and tolling issues before summary judgment can be decided.
 

 A. Illinois Securities Law Statute of Repose
 

 Waste Management first claims that eleven of the transactions certified by this Court are time-barred by the statute of repose under Illinois law. According to Waste Management, the Illinois Securities Law governs these transactions and that statute places a three-year statute of limitations which may be tolled up to, but not exceeding, two additional years.
 
 See
 
 815 III. Comp. Stat. 5/13(D) (West 1999). Consequently, because the claimants failed to file the action within the allotted time, the transactions in question are barred.
 

 Waste Management’s argument has merit
 
 only if
 
 the breach of contract claim is “reliant ‘upon ... matters for which relief is granted’ by the Securities Law.”
 
 Tregenza v. Lehman Brothers Inc.,
 
 287 Ill.App.3d 108, 110, 222 Ill.Dec. 607, 608, 678 N.E.2d 14 (quoting 815 Ill. Comp. Stat. 5/13(D) [West 1992),
 
 appeal denied,
 
 174 Ill.2d 595, 227 Ill.Dec. 17, 686 N.E.2d 1173 (1997). While
 
 Tregenza
 
 does support the concept that a claim, although not brought under the Illinois Securities Law, can be barred by the statute of limitations contained in that statute, it does not follow that a breach of contract claim is haired by that statute as well.
 
 See id.
 
 Essentially, Waste Management must proffer some evidence that the class’ claim is one that is covered by the law. To that end, Waste Management argues that the breach of contract claim also constitutes a claim under section 12(G) of the Illinois Securities Law. Section 12(G) makes it unlawful for any person to obtain money or property through the sale of securities by means of an untrue statement. Nee 815 Ill. Comp. Stat. 5/12(G).
 

 At first blush, it appears that the class’ claim and a claim under section 12(G) are, at the least, similar. Upon closer examination, however, it is clear that the claims diverge in an important respect. A claim under the Illinois Securities law requires reliance.
 
 See Foster v. Alex,
 
 213 Ill. App.3d 1001, 1006, 157 Ill.Dec. 778, 781-82, 572 N.E.2d 1242 (1991). To establish a claim under section 12(G), a plaintiff must establish that it “reasonablfy]” relied on the misleading information provided by the defendant.
 
 Id.
 
 Not so here. The class is not required to show reliance to establish a breach of contract claim.
 
 See Mowbray I,
 
 45 F.Supp.2d at 137 (holding Mowbray need not establish reliance for breach of warranty claim). Indeed, this Court must agree with the statement in
 
 Fujisawa Pharm. Co., Ltd. v. Kapoor,
 
 16 F.Supp.2d 941, 951 (N.D.Ill.1998), that “it is unclear, at best, how the breach of a stock purchase agreement would constitute a violation of the Illinois Securities Law.”
 

 B. Waiver
 

 Waste Management next contends that the summary judgment motion is pre-
 
 *138
 
 matare because discovery is incomplete. Specifically, “evidence concerning the state of mind of each class member is necessary to develop essential facts regarding whether the class members waived their warranties.” Def.’s Mem. at 9. While there is case law to support Waste Management’s assertion that a party may waive her contractual protections, Waste Management has offered no evidence that the cited case law is applicable to the case at bar.
 

 Waste Management’s inadequate waiver argument rests on speculation and conjecture. The- argument is as follows: (1) some of the class members became employees or consultants to Waste Management; (2) these employees or consultants, often senior executives and managers of the acquired businesses, were familiar with the waste disposal business and depreciation schedules in general; and (3) in their post-acquisition work for Waste Management subsidiaries “could very well have come to understand Waste Management’s accounting policies.” Def.’s Mem. at 11-12.
 
 [2]
 

 This Court stated in its previous opinion on this matter that “Waste Management must raise the possible existence of ‘specified’ discoverable facts” before a summary judgment motion would be denied.
 
 Mowbray I,
 
 45 F.Supp.2d at 143. The affidavit presented by Waste Management fails to meet even this light burden. The affidavit offered in support of its memorandum simply reiterates the same speculation.
 
 See
 
 Carroll Aff. ¶ 13 (“a large number of the class members may be vulnerable to [the waiver] defense”). This is simply not enough to forestall summary judgment.
 

 C. Statute of Limitations
 

 Waste Management claims that discovery is also necessary to establish that the breach of contract claim is time barred as to fourteen of the transactions.
 
 [3]
 
 The transactions at issue here involve eight different state statutes of limitations, four of which employ the discovery rule (the “Discovery Group”) and four of which have an operationally similar fraudulent concealment rule (the “Fraudulent Concealment Group”).
 

 1. Discovery Group
 

 According to the parties, the Discovery Group is comprised of thirteen class members who were involved in seven transactions.
 
 [4]
 
 Their contracts are governed by the law of four states: California, Maryland, Pennsylvania, and Texas — all of which apply the discovery rule to toll the statute of limitations.
 
 See
 
 Cal.Civ.Proc. Code § 338(d) (West 1999);
 
 Lee v. Escrow Consultants, Inc.,
 
 210 Cal.App.3d 915, 259 Cal.Rptr. 117, 121 (1989);
 
 Hecht v. Resolution Trust Corp.,
 
 333 Md. 324, 334-35, 635 A.2d 394 (1994);
 
 Pocono Int’l Raceway, Inc. v. Pocono Produce, Inc.,
 
 503 Pa. 80, 84-85, 468 A.2d 468 (1983);
 
 El Paso Assocs., Ltd. v. Thurman & Co.,
 
 786 S.W.2d 17, 20 (Tex.App.1990).
 

 The discovery rule does not differ significantly from state to state — a cause
 
 *139
 
 of action does not begin to accrue until the plaintiff discovers or, through reasonable diligence, should have discovered the breach.
 
 See Porghavami v. Marine-Midland, Bank,
 
 No. 98-15615, 1999 WL 1091867, 1999 U.S.App. LEXIS 31868, at *6 (9th Cir. Dec. 3, 1999) (“knew, or in the exercise of reasonable diligence, should have discovered”);
 
 Hecht,
 
 333 Md. at 335, 635 A.2d 394 (discovery rule requires notice of the claim — “express cognition or awareness ... of all facts”);
 
 Pocono,
 
 503 Pa. at 85, 468 A.2d 468 (application of discovery rule requires the exercise of “due diligence”);
 
 El Paso,
 
 786 S.W.2d at 20 (discovery rule requires exercise of “reasonable diligence”).
 

 Normally, the burden lies on the defendant to establish an affirmative defense. In its brief in opposition to Mowbray’s motion, however, Waste Management correctly notes that this Court stated in its previous opinion that the “transactions are presumptively time-barred.”
 
 Mowbray II,
 
 189 F.R.D. at 200 n. 4. As a result, the burden of going forward initially is on Mowbray to rebut the presumption by presenting evidence that the statute of limitations was tolled.
 

 To rebut the presumption, Mow-bray argues that Waste Managment had exclusive control over its financial records and the release of its financial statements. As a result, none of the class members could have, through the exercise of reasonable diligence, discovered that the audited financial statements were untrue. Moreover, according to Mowbray, it borders on the ridiculous to believe that class members, far removed from the financial data, could discover the inaccuracies that Waste Management discovered only after a “comprehensive financial review.” Indeed, it was not until the press release that the class members had notice of the misleading statements. Consequently, the statute of limitations was tolled. Based on the foregoing, this Court rules that Mowbray has met its burden of rebutting the presumption.
 

 At this juncture, therefore, it is incumbent upon Waste Management to present some evidence that the class members knew or, with reasonable diligence, should have discovered the false statements. Waste Management has failed to do so. Instead, it beseeches this Court to allow more discovery, claiming that the discovery rule rests on the “state of mind of each class member.”
 

 This argument fails for the same reason it failed earlier. Waste Management does not “raise the possible existence of ‘specified’ discoverable facts.” Waste Management offers no explanation of how, or even where, the class members could have discovered the information prior to the press release. It points to no memorandum or letter that was sent to the parties that put them on notice. It does not allege the class members were privy to a conversation, or had access to files that contained the relevant information. In essence, it has articulated no “plausible bases for the [] belief that previously undisclosed or undocumented facts exist.” Consequently, it has failed to meet its burden under Rule 56(f). As a result, summary judgment must be GRANTED with respect to the Discovery Group.
 

 2. Fraudulent Concealment Group
 

 The parties agree that the Fraudulent Concealment Group is composed of twenty-one class members who were involved in seven of the transactions.
 
 [5]
 
 Their contracts are governed by the law of four states: Wisconsin, New York, Georgia, and Michigan. In all of those jurisdictions, a defendant’s fraudulent concealment of
 
 *140
 
 facts underlying a plaintiffs cause of action tolls the statute of limitations. Like the Discovery Group, the transactions are presumptively barred by the statute of limitations. As a result, the burden is first on Mowbray tp present some evidence of “fraudulent concealment.” Only if Mow-bray meets this burden does Waste Management have to counter the evidence.
 

 While it is true that the discovery and fraudulent concealment doctrines are “operationally similar,” there is an important distinction. Specifically, fraudulent concealment requires some affirmative act on the part of the defendant to conceal or coverup the wrongful conduct which underlies the action.
 
 See Bell v. City of Milwaukee,
 
 514 F.Supp. 1363, 1372 (E.D.Wis.1981);
 
 Shipman v. Horizon Corp.,
 
 245 Ga. 808, 808-09, 267 S.E.2d 244 (1980);
 
 Lumber Village, Inc. v. Siegler,
 
 135 Mich.App. 685, 694, 355 N.W.2d 654 (Mich.Ct.App.1984);
 
 Rizk v. Cohen,
 
 73 N.Y.2d 98, 105-06, 538 N.Y.S.2d 229, 233, 535 N.E.2d 282 (N.Y.1989). Even the cases cited by Mowbray recognize this proposition.
 
 See Glynwill Invs. N.V. v. Prudential Sec., Inc.,
 
 No. 92 Civ. 9267(CSH), 1995 WL 362500, 4995 U.S. Dist. LEXIS 8262, at *9 (S.D.N.Y. June 16, 1995) (stating plaintiff must demonstrate that defendant “concealed the basic facts that would reveal the existence of [its] unlawful behavior”);
 
 Bell,
 
 514 F.Supp. at 1372 (finding officials had concealed the wrongful acts of police officer);
 
 Shipman,
 
 245 Ga. at 809, 267 S.E.2d 244 (stating “there must be a separate independent actual fraud”).
 

 Given this backdrop, Mowbray must present some evidence of an affirmative act by Waste Management that suggests it sought to conceal its misdeeds. Mowbray offers no such evidence. Instead, it points to ‘Waste Management's] continued [] pattern of publicly filing false and misleading financial results.” Pis.’ Reply Mem. at 11-12. While this is evidence of the underlying misconduct that led to the suit, it does not indicate that Waste Management subsequently sought to conceal its misdeeds. As a result, summary judgment as to the Fraudulent Concealment Group must be DENIED.
 

 III. CONCLUSION
 

 For the reasons set forth above, Mow-bray’s motion for partial summary judgment as to liability for breach of contract (docket no. 83) is GRANTED as to all members of the class save for the Fraudulent Concealment Group, as to which class members the motion is DENIED.
 

 [1]
 

 . Waste Management has appealed the propriety of the class certification pursuant to Fed.R.Civ.P. 23(f) and that appeal is pending. "An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.”
 
 Id.
 
 No stay has been entered here.
 

 [2]
 

 . The District Court of the Southern District of New York rejected a similar argument made by Waste Management ruling that, even if the parties were intimately aware of the financial information with respect to their individual subsidiary, "this in no way supports the inference that they had intimate and complete knowledge” of the accounting practices of Waste Management.
 
 Promuto v. Waste Management, Inc.,
 
 44 F.Supp.2d 628, 647-648 (S.D.N.Y.1999). Here, Waste Management does not even suggest that the parties had knowledge of any part of the operation, only that they may have gained knowledge.
 

 [3]
 

 . Waste Management, in its brief, states that this argument applies only to 13 transactions. Its own exhibit, however, establishes that 14 transactions are involved.
 
 See
 
 Def.'s Mem. Ex. B.
 

 [4]
 

 . As identified in Def.’s Ex. B, the group consists of the class members involved in the following transactions: Poor Boy Maintenance and Refuse, Inc. (5); Warner Co. (15); Fort Bragg Disposal Co., Inc. (17); Donald Whitus, Inc. (79); American Waste Systems, Inc. (82); Richard C. Paxman, Inc. (99); and California Waste Control, Inc. (101).
 

 [5]
 

 . As identified in Def.’s Ex. B, the group consists of the class members involved in the following transactions: Valley Sanitation of Stoughton, Inc. (13); Valley Sanitation of Madison, Inc. (14); Spagnola Trash Removal Corp. (23); Efficient Sanitation, Inc. (50); Currier Disposal, Inc. (59); Superior Sanitation Service, Inc. (60); Top Job Sanitation Co., Inc. (73).